```
IN THE UNITED STATES DISTRICT COURT
   FOR THE NORTHERN DISTRICT OF INDIANA
             HAMMOND DIVISION
```

```
MARCEY MEREDITH,            )
                            )
Plaintiff,                  )
                            )   CAUSE NO. 2:14-CV-183
      vs.                   )
                            )
LAKE COUNTY SHERIFF,        )
et al.,                     )
                            )
Defendants.
```

**OPINION AND ORDER**

This matter is before the Court on "Defendant Lake County Sheriff's Motion to Bifurcate § 1983 *Monell* Claims and Stay Discovery and Trial on Those Claims," filed by the Lake County Sheriff, on December 11, 2015 (DE #72). For the reasons set forth below, the motion is **GRANTED**. Pursuant to Federal Rule of Civil Procedure 42(b), the *Monell* claims against the Lake County Sheriff are **BIFURCATED** from the 42 U.S.C. section 1983 claims against the individually-named defendants for both discovery and trial. All discovery and trial of the *Monell* claims is **STAYED** pending resolution of the claims against the individually-named defendants. The Court **ORDERS** that Plaintiff's right to a jury trial on the *Monell* claims is preserved.

BACKGROUND

The plaintiff, Marcey Meredith ("Plaintiff"), filed a

complaint in this case on May 30, 2014. (DE #1). Plaintiff was granted leave to file an amended complaint on January 6, 2015, and the first amended complaint was docketed that same day. (DE #29 & DE #30.) This action is brought pursuant to 42 U.S.C. section 1983. According to the first amended complaint, on December 14, 2012, Plaintiff was a patron in a liquor store located in Gary, Indiana, when she was approached by defendant Officer A. Thomas ("Officer Thomas") who asked her to step outside. (DE #30, p. 2.) When she exited the store, Officer Thomas grabbed her, slammed her into a wall, and handcuffed her. (*Id*.) When she questioned this, Officer Thomas and two other officers, Officer J. Corle ("Officer Corle") and Officer William T. Downs ("Officer Downs"), told her to "shut-up bitch." (*Id*.) Although she was not resisting, the aforementioned officers allegedly slammed her onto the ground, grabbed her hair, and began beating her head and face into the cement. (*Id*.) One of the officers then shoved his knee into her neck, picked her up, and dropped her onto the ground, which chipped and loosened her tooth. (*Id*.) After the alleged beating, despite being covered in blood, Plaintiff was taken to the Lake County Jail instead of the hospital where she was held for two days without appropriate medical treatment. (*Id*. at 3.) Plaintiff alleges that, during that time, she was only offered Tylenol for her injuries by defendants Shawn Emola, RN ("Nurse Emola") and Dr. William Forgey ("Dr. Forgey"). (*Id*. at 5.) Ultimately, Plaintiff

2

was not charged with a crime and was released. (*Id*. at 3.) Upon leaving the Lake County Jail, she was treated in the emergency room for her injuries which included a chipped tooth, physical pain, cervical strain, bruising, contusions, a black eye, a split lip, and soreness to her face, head, body, and limbs. (*Id*.)

Plaintiff lists the defendants in her first amended complaint as the Lake County Sheriff (the "Sheriff") in his official capacity, and Officer Thomas, Officer Corle, and Officer Downs as parties "acting in their individual capacity, within the scope of their employment and under color of law" (collectively, "individually-named Officer Defendants"). (*Id*. at 1.) Nurse Emola and Dr. Forgey are also named in their "individual capacity, pursuant to 42 U.S.C. § 1983, and were acting under color of law and within the scope of their employment." (*Id*. at 5.)

Based on the actions described above, Plaintiff brings her claims against the individually-named Officer Defendants for "excessive and unreasonable force, a false arrest, and unreasonable seizure, in violation of Plaintiff's federally protected rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983." (*Id*. at 1.) In addition to or in the alternative, she alleges those same claims under a "theory of bystander liability" because the individually-named Officer Defendants "watched as their fellow officers battered and subjected the Plaintiff to excessive and unreasonable force, false arrest,

3

and unlawful seizure but failed to intervene to protect the Plaintiff, in spite of having a meaningful opportunity to do so." (*Id.* at 4.) She also alleges that the individually-named Officer Defendants "denied Plaintiff adequate medical care for her injuries, when they failed to take Plaintiff to the hospital following her arrest" in violation of the Eighth and/or Fourteenth Amendments and section 1983. (*Id.*) Her claims against the Sheriff stem from the allegedly "unconstitutional/constitutionally deficient policies, practices, procedures, and/or customs in effect (including the custom and policy of inadequate training), that resulted in the excessive and unreasonable force and false arrest of Plaintiff in violation of her right to be free from unreasonable seizure" pursuant to the Fourth and Fourteenth Amendments and section 1983. (*Id.* at 2.) Finally, her claims against Nurse Emola and Dr. Forgey arise under the Eighth and/or Fourteenth Amendments and section 1983 because they allegedly "denied her adequate medical care and adequate pain management care for the serious medical condition(s)" and "declined to permit the Plaintiff to be sent to a hospital so that appropriate, adequate medical and pain management care could be received." (*Id.* at 5.)

To the extent Plaintiff seeks damages against the Sheriff in his official capacity, his claim is, in effect, an action against the Sheriff's Department, a municipality. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690 (1978); *Smith v. County of*

4

*Kosciusko*, No. S91-5(RDP), 1991 WL 261766, at *2 (N.D. Ind. Nov. 15, 1991).

The Sheriff filed the instant motion to bifurcate on December 11, 2015. (DE #72.) In it, the Sheriff requests that the Court bifurcate all of Plaintiff's claims against the individually-named Officer Defendants from Plaintiff's section 1983 *Monell* claims against the Sheriff's Department and to stay discovery and trial on the *Monell* claims until and unless Plaintiff first proves an underlying constitutional violation against any of the individually-named Officer Defendants. On December 18, 2015, the Sheriff also filed a motion for extension of time to respond to the pending *Monell* discovery until ruling on the motion to bifurcate was complete. (DE #73.) Magistrate Judge Paul R. Cherry ("Judge Cherry") took the motion under advisement and ordered Plaintiff to file a written response by December 30, 2015. (DE #74.) Plaintiff filed a response in opposition to the motion for bifurcation on December 21, 2015, but did not file a separate response to the motion for extension of time. (DE #75.) The Sheriff filed a reply on December 28, 2015. (DE #76.) Noting the lack of objection by Plaintiff, on January 25, 2016, Judge Cherry granted the motion for extension of time and stayed the deadline for the Sheriff to respond to Plaintiff's discovery requests pending a ruling on the motion to bifurcate. (DE #77.) The motion to bifurcate is thus ripe for adjudication.

DISCUSSION

Federal Rule of Civil Procedure 42(b) states, in relevant part, that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial." Fed. R. Civ. P. 42(b). Bifurcation may be appropriate if one or more of the Rule 42(b) criteria is met. *See, e.g., Treece v. Hochstetler*, 213 F.3d 360, 365 (7th Cir. 2000). Courts have broad discretion in deciding whether to bifurcate issues presented in a case or to try them separately. *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). Indeed, the district court's exercise of its discretion to bifurcate will be set aside on appeal "only upon a clear showing of abuse." *Treece,* 213 F.3d at 364-65. Federal Rule of Civil Procedure 26(d) also permits a court to stay discovery on *Monell* claims. Fed. R. Civ. P. 26(d); *see also Carr v. City of N. Chicago*, 908 F.Supp.2d 926, 927 (N.D. Ill. 2012). The decision of whether to bifurcate is a case-specific analysis. *Cadiz v. Kruger*, No. 06 C 5463, 2007 WL 4293976, at *3 (N.D. Ill. Nov. 29, 2007).

The Sheriff argues that bifurcation will be more convenient and efficient for the parties, it will avoid prejudice, expedite the matter, and economize resources for the Court and parties

6

during the discovery process and trial.  (DE #72, p. 2.)  In response, Plaintiff "agrees that discovery could be stayed on the § 1983 *Monell* claims" against the Sheriff, but she states, without any argument or explanation, that it will "hardly 'expedite and economize' the case" . . . "[i]f anything, it will drag it out and cause this [C]ourt to continue the case and trial for another two or three years."  (DE #75, p. 2.)

In this case, the *Monell* claims center around allegations of excessive force, a failure to intervene, and false arrest. Specifically, Plaintiff alleges that there were "unconstitutional/constitutionally deficient policies, practices, procedures, and/or customs in effect (including the custom and policy of inadequate training), that resulted in the excessive and unreasonable force and false arrest of Plaintiff in violation of her right to be free from unreasonable seizure."[1]  (DE #30, p. 2.) The Court finds that these types of claims are well suited for bifurcation.  This is so because "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point."  *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (emphasis in original).  See also *Swanigan v. City of*

---

[1] The Court notes that Plaintiff does not appear to allege any unconstitutional policies, practices, procedures, or customs related to the denial of adequate medical treatment claims.  (See DE #30, generally.)

7

*Chicago*, 775 F.3d 953, 962 (7th Cir. 2015) ("If the plaintiff fails to prove a violation of his constitutional rights in his claim against the individual defendants, there will be no viable *Monell* claim based on the same allegations."). Furthermore, "there can be no liability under *Monell* for failure to train when there has been no violation of the plaintiff's constitutional rights." *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007).[2] Thus, the Court agrees with the Sheriff that it is logical to determine whether the individually-named Officer Defendants violated Plaintiff's constitutional rights before requiring the Court (and the parties) to expend resources litigating the *Monell* claims against the Sheriff's Department that might never be reached or adjudicated. In the event that the individually-named Officer Defendants are found not to have committed the constitutional violations, bifurcating the *Monell* claims would have served to avoid prejudice to the Sheriff's Department for unnecessarily defending these claims. And should the individually-named Officer Defendants be found liable, ultimately, Plaintiff's right to a jury trial on the *Monell* claims would be unaffected by bifurcation; in fact, Plaintiff does not argue that she would be prejudiced by

---

[2] While the Seventh Circuit has left the door open for the possibility that, when questions of qualified immunity are at play, a municipality could be found liable under *Monell* even if its officers are not, such a hypothetical concern is premature at this stage and could be appropriately determined at the conclusion of a trial on individual liability. See *Saunders v. City of Chicago*, 146 F. Supp. 3d 957, 969-70 (N.D. Ill. 2015) (citing *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010)).

bifurcation in any concrete way.

Efficiency, convenience, and economy also weigh in favor of bifurcation. "[D]iscovery relating to the municipality's policies and practices, which (depending on the size of the police department) can add significant time, effort, and complications to the discovery process." *Medina v. City of Chicago*, 100 F. Supp. 2d 893, 895 (N.D. Ill. 2000); see also *Price v. Kraus*, No. 2:15-CV-331-PRC, 2016 WL 36982, at *2-3 (N.D. Ind. Feb. 1, 2016). Judges throughout the circuit have recognized that oftentimes, "claims of municipal liability require an extensive amount of work on the part of plaintiff's attorneys and experts, and an extraordinary amount of money must be spent in order to prepare and prove them." *Moore v. City of Chicago*, No. 02 C 5130, 2007 WL 3037121, at *9 (N.D. Ill. Oct. 15, 2007); see also *Cruz v. City of Chicago*, No. 08 C 2087, 2008 WL 5244616, at *2 (N.D. Ill. Dec. 16, 2008) (convenience and efficiency would be best served through bifurcation, in part, because of "extensive amount of work" associated with *Monell* claims). In this case, the Sheriff argues that discovery related to Plaintiff's *Monell* claims would be a burdensome, time consuming, expensive task because the Sheriff's Department would have to "locate, compile, and produce numerous documents" and engage in a "detailed investigation" to answer *Monell* interrogatories. (DE #72, p. 4.) The Sheriff further contends that:

> [t]here will inevitably be depositions of several fact witnesses relating to Plaintiff's

9

> Monell claims in addition to Fed. R. Civ. P.
> 30(b)(6) witnesses. Additionally, each party
> will need to retain and defend against expert
> witnesses, which will add to the discovery
> process, add to ligation expenses, and
> lengthen the trial of this matter. Thus,
> bifurcating and staying discovery on the
> Monell claims prevents the parties from
> spending a daunting amount of time, resources,
> and money participating in discovery that may
> be ultimately unnecessary.

(*Id*. at 4-5.) Other than a brief and unelaborated upon statement that bifurcation will "drag [the case] out and cause this [C]ourt to continue the case and trial for another two or three years," Plaintiff does not specifically dispute any of the Sheriff's assertions. (DE #75, p. 2.) Plaintiff's main concern appears to be with the possibility that the Sheriff could be using the motion "as a court-sanctioned means to prevent Plaintiff from receiving discovery responses that she needs regarding each named officer." (*Id*.) Plaintiff notes that she has sent discovery requests to the defendants asking for "copies of all discipline given to Officers Thomas, Corle, and Downs for any reason from the year 2006 through today's date" and interrogatories asking for further "details of allegations made against the three officers for battery, excessive force, police brutality or physical injury to a suspect, as well as information regarding arrests made without probable cause, false arrest or false imprisonment for the five (5) years preceding Plaintiff's Complaint." (*Id*.) In his reply, the Sheriff points out that he has not proposed staying the discovery related to the

10

individually-named Officer Defendants and is responding in good faith to all of the non-*Monell* discovery. (DE #76, p. 2.)

According to Plaintiff's response and attached discovery exhibits, it does appear that Plaintiff has misconstrued the Sheriff's bifurcation request. Her concern that she will be prevented from undertaking in discovery related to the individually-named Officer Defendants is misplaced. Rather, the Sheriff's argument is that limiting discovery to the individually-named Officer Defendants at this time (as opposed to allowing the discovery related to the *Monell* claims against the Sheriff to proceed concurrently) will expedite and economize the case. The Court agrees that this is likely, especially given the general nature of the policies, procedures, and/or customs described above[3] that led to the alleged constitutional violations. See *Price*, 2016 WL 36982 at *3 (distinguishing general policy allegations from specifically detailed ones and granting bifurcation); see also *Carr*, 908 F. Supp. 2d at 933-34 (describing the additional cost, time, and effort burdens related to *Monell* discovery as distinguishable from discovery associated with the individual claims and finding that "bifurcation is likely to allow some or all of the parties to avoid those burdens.")

Based on the foregoing, and in light of Plaintiff's apparent misunderstanding regarding the extent of the Sheriff's request, the

---

[3] Pages 7, *supra* & First Amended Complaint (DE #30, pp. 1-2).

Court finds that the avoidance of prejudice and the interests of justice, efficiency, convenience, and economy support bifurcation.

CONCLUSION

For the reasons set forth above, "Defendant Lake County Sheriff's Motion to Bifurcate § 1983 *Monell* Claims and Stay Discovery and Trial on Those Claims" (DE #72) is **GRANTED**. Pursuant to Federal Rule of Civil Procedure 42(b), the *Monell* claims against the Lake County Sheriff are **BIFURCATED** from the 42 U.S.C. section 1983 claims against the individually-named defendants for both discovery and trial. All discovery and trial of the *Monell* claims is **STAYED** pending resolution of the claims against the individually-named defendants. The Court **ORDERS** that Plaintiff's right to a jury trial on the *Monell* claims is preserved.

**DATED: September 13, 2016**        /s/ **RUDY LOZANO, Judge**
                                     **United States District Court**